UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| 1199SEIU, UNITED HEALTHCARE WORKERS EAST, Plaintiff | ) ) ) | |
| | ) | |
| v. | ) | C.A. No. 12-cv-30033-MAP |
| | ) | |
| NORTH ADAMS REGIONAL HOSPITAL, Defendant | ) ) ) | |

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 12)

February 26, 2013

PONSOR, U.S.D.J.

## I. INTRODUCTION

Plaintiff 1199SEIU United Healthcare Workers East

("Union") has brought this lawsuit to enforce an arbitration

award concerning the discharge of Union member Christopher

Wheeler by the Defendant North Adams Regional Hospital

("Hospital").  The Union seeks direct enforcement of the

arbitration award by this court, or, in the alternative, a

remand to the Arbitrator for clarification.  The Hospital

has responded that the disputes identified by the Union

arise out of a departmental restructuring that was not

contemplated by the original arbitration award.  Because the

dispute is a new matter, the Hospital argues, neither remand
to the Arbitrator nor enforcement of the original award by
this court is appropriate.  Instead, it says, the Union
should be required to start the formal grievance process
again.

As will be seen below, the Union has the stronger
argument.  The purported departmental restructuring -- if
such a re-structuring occurred -- does not constitute the
sort of changed circumstance that necessitates a re-
initiation of the grievance process.  Because remand to the
Arbitrator is the appropriate remedy here, the Union's
Motion for Summary Judgment (Dkt. No. 12) will be allowed.

## II. <u>FACTS</u>

In March 2009, Union member Christopher Wheeler was
terminated from his position with the Hospital as a lead CT
scan technologist and x-ray technologist.  Plaintiff Union
grieved the termination, but the grievance was not resolved
during the course of the subsequent grievance procedure.
Pursuant to their Collective Bargaining Agreement, the
parties submitted the dispute to arbitrator Richard
Boulanger ("Arbitrator").  On October 7, 2011, the

Arbitrator ruled as follows:

> The grievance is upheld in part and denied in
> part.  The Hospital did not have just cause to
> terminate Mr. Wheeler's employment.  The Hospital
> had just cause to issue an unpaid, nine (9)
> calendar month suspension to Mr. Wheeler.  Mr.
> Wheeler shall be forthwith reinstated to his
> position.  He shall forthwith be made whole
> regarding all contract rights and benefits,
> including lost wages, less the unpaid, nine (9)
> month suspension and any interim earnings.
> References to the grievant's termination shall be
> expunged from his personnel file, and replaced
> with the unpaid, nine (9) calendar month
> suspension.

(Dkt. No. 1-4, Arbitrator's Award 1.)

Based on the Arbitrator's decision, the Hospital

permitted Wheeler to return to work.  However, the parties

have disagreed on what actions have to be taken by the

Hospital in order to comply fully with the Arbitrator's

order to reinstate Wheeler to his former position and to

make him whole.

The Union contends that, contrary to the Arbitrator's

intent, Wheeler has been returned to an inferior position.

Before his termination, Wheeler worked as lead CT

technologist and performed services in three modalities: CT

Scan, ultrasound, and x-ray.  Wheeler worked in ultrasound

approximately 50% of his time prior to termination.  In his

reinstated position, Wheeler has been denied any ultrasound work. It is undisputed that ultrasound work results in an additional $1.00 per hour in base pay. The Union contends that Wheeler should be restored to ultrasound work and that his back pay and overtime award should reflect increased pay from a proportion of ultrasound work at the higher base pay.

The Union also takes the position that Wheeler has not been made whole for "all contract rights and benefits, including lost wages." The parties disagree on the proper amount of overtime owed to Wheeler.[1]

The Hospital takes the position that its treatment of Wheeler following his reinstatement has arisen from new circumstances not recognized in the arbitration proceeding, specifically a restructuring of the Hospital's operations as a result of financial pressures. The Hospital claims to have implemented a number of changes in the Medical Imaging

---

[1] The Hospital has contended that the Union has asked that Wheeler's back pay award include the loss of time with his family, his travel time, lost vacation time, time spent in the arbitration hearing, and travel expenses to and from Berkshire Medical Center (where Wheeler worked for a period following his termination). However, the Union's submission makes it clear that its claim is not so broad; it seeks only inclusion of what it deems the proper amount of overtime in the lost wage award.

Department ("Department") to reduce costs and increase efficiency.  The Department has changed staff schedules, increased specialization in the technologist positions to insure staff proficiency, and given lead technologists more responsibility for running their units.  These structural changes, according to the Hospital, prevent the Department, as a practical matter, from assigning Wheeler to perform ultrasound services as he did before his termination. Giving Wheeler his prior ultrasound work would generate staff shortages in other modalities and excess staffing in ultrasound services.  The Hospital has provided the affidavit of Lisa Harrison, Director of Medical Imaging at the Hospital since October 2008, to attest to these changes. (Dkt. No. 17-1, Ex. 1 Harrison Aff.)

     The Union disputes whether there has been any restructuring to the Department that would prevent the Hospital from reinstating Wheeler to his prior ultrasound work.  It contends that the Hospital's restructuring claims are simply a pretext to avoid implementing the arbitration award.  The Union has submitted affidavits from Wheeler and from an Administrative Organizer for 1199SEIU, Raymond

Drewnowski, contending that the responsibilities of lead technologists have remained the same over the relevant period and that other technologists continue to work in multiple modalities.  (Dkt. No. 20-3, Wheeler Aff.; Dkt. No. 20-1, Drewnowski Aff.)  The Union contends that the only staffing changes in the Department made by the Hospital were those made to cover Wheeler's ultrasound work when he was wrongfully terminated.

In the complaint now before the court, the Union seeks to enforce the Arbitrator's award pursuant to § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a), 28 U.S.C. § 1337.  The Union's claims for relief ask for either (1) judgment enforcing the Arbitrator's Award, as the Union interprets it, in its entirety; or (2) an order of remand to the Arbitrator for clarification.  As noted above, the court will allow the Union's Motion for Summary Judgment (Dkt. 12) to the extent that it seeks a remand.

### III. DISCUSSION

"[I]t is firmly established within the federal labor law that a district court may, in the context of a section 301 proceeding, resubmit an existing arbitration award . . .

-6-

to the original arbitrators for 'interpretation' or 'amplification.'" <u>Locals 2222, Int'l Bros. Elec. Workers v. New England Tel. & Tel. Co.</u>, 628 F.2d 644, 647 (1st Cir. 1982) (internal citation omitted).  As with <u>Locals 2222</u>, "The only question is whether in the present circumstances it would be more appropriate for a court to channel the dispute back through the entire grievance/arbitration process rather than to simply send it again to the original arbitrator."  628 F.2d at 648.

Re-submission to the original arbitrator is appropriate for "interpretation" or "amplification" of the original award.  In contrast, of course, an entirely separate grievance must proceed through a new grievance process.  As the Fifth Circuit has held, "[a] remand is not appropriate . . . where it would force a decision on an issue not previously submitted to the arbitrator.  Under those circumstances, the plaintiff must again invoke the grievance and arbitration procedure in order to resolve the collateral issue."  <u>Oil, Chem. & Atomic Workers Int'l Union v. Rohm & Haas, Texas Inc.</u>, 677 F.2d 492, 495 (5th Cir. 1982).

The question before this court, therefore, is whether the disagreement over the purported restructuring of the Hospital's Department constitutes a collateral issue about which the Union must again invoke the grievance and arbitration procedure, or merely a question of interpretation more properly remanded to the Arbitrator.

One sub-issue before the court is straightforward and may be quickly resolved. Federal courts have consistently remanded questions of back pay to the original arbitrator when the parties cannot agree on the proper amount. See, e.g., Unite Here Local 26 v. Taj Hotel Boston, 731 F. Supp. 2d 95, 101 (D. Mass. 2010) (Saris, J. adopting the Report and Recommendation of Dein, U.S. Mag. J.) (noting that it is the "'general rule' that where an arbitration award requires reinstatement and back pay, and the parties cannot agree on the amount of back pay, the matter should be remanded to the original arbitrator to clarify the award"); Teamsters Local No. 25 v. Penn Transp. Corp., 359 F. Supp. 344 (D. Mass. 1973); see also Aluminum Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp., 991 F.2d 1545, 1549 (11th Cir. 1993) (noting that "if the parties cannot agree on the

amount of back pay . . ., the normal course of action is to treat the award as ambiguous or incomplete and remand the dispute to the original arbitrator to clarify the award"); San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Div., 481 F.2d 821, 825 (5th Cir. 1973) (stating that the "normal course of action in [disputes over back pay], then, is for the court to remand the matter to the original arbitrator for clarification").

The Hospital has not cited any case where a court declined to remand a disputed back pay award.  At a minimum, therefore, this case must be remanded to the Arbitrator for a calculation of the proper back pay award.

The question of the propriety of remand for clarification of the terms of Wheeler's reinstatement is not so straightforward.  Defendant Hospital has undeniably suffered financial pressure.  On June 14, 2011, the Hospital filed for Chapter 11 bankruptcy.  The Hospital has pointed to numerous cases involving employers who were unable to keep reinstated workers in similar positions due to financial difficulties or loss of business, where courts have found that this new dispute required re-initiation of

the formal grievance process, not remand.   See <u>Truck</u>
<u>Drivers, Chauffeurs & Helpers, Local Union 100 v. Liquid</u>
<u>Carbonic Corp.</u>, 562 F. Supp. 825, 828-29 (S.D. Ohio 1983)
(holding that a denial of transfer after reinstatement was a
new dispute); <u>Detroit & Midwestern States Joint Bd. v. White</u>
<u>Tower Laundry & Cleaners</u>, 353 F. Supp. 168 (E.D. Mich. 1973)
(holding that a transfer to a new department after
reinstatement because of a loss of business was a new
dispute); <u>Hellman v. Program Printing, Inc.</u>, 400 F. Supp.
915 (S.D. N.Y. 1975) (denying enforcement of an award for
reinstatement when grievant was not rehired due to a lack of
work); <u>Washington Heights-West Harlem-Inwood Metal Health</u>
<u>Council, Inc. v. Dist. 1199 Nat'l Union of Hosp. & Health</u>
<u>Care Employees</u>, 608 F. Supp. 395, 296 (S.D.N.Y. 1985)
(staying reinstatement of employee pending resolution of new
grievance based on allegations of wrongdoing unrelated to
previous grievance); <u>Int'l Chem. Workers Union v. BASF</u>
<u>Wyandotte Corp.</u>, 774 F.2d 43, 46-47 (2d Cir. 1985) (holding
that elimination of reinstated employee's position in new
collective bargaining agreement and a refusal to rehire was
a new issue not covered nor contemplated by the arbitration

-10-

award and should go through fresh arbitration); <u>Chrysler</u>
<u>Motors Corp v. Int'l Union, Allied Indus. Workers of Am.</u>, 2
F.3d 760, 763 (7th Cir. 1993) (affirming denial of contempt
order where employer subsequently discharged reinstated
employee based on new allegations of wrongdoing).

The facts of the case now before this court, however,
differ significantly from the facts described in the cases
cited by the Hospital in two important ways.

First, unlike the cases cited by the Hospital, the
Union here vigorously disputes the authenticity of the
purported restructuring and the veracity of the Hospital's
claims regarding it.  An arbitrator -- and not this court --
is best equipped to determine whether an employer is dodging
an award by use of a pretext or legitimately exercising its
managerial rights.

Second, the Hospital's purported restructuring occurred
before and during the arbitration over Wheeler's
reinstatement and back pay, not afterwards.  The proper
manner of reinstatement in the context of a restructured
department (assuming there was a restructuring) and the
appropriate back wages given changes in staffing (assuming

-11-

there were changes) were matters that were, or easily could have been, placed before the Arbitrator at the time of the arbitration.

Regarding the first point, the plaintiffs in the cases cited by the Hospital did not dispute the existence of changed circumstances and restructuring.  In those cases, the plaintiffs merely disputed how those changes affected or targeted employees who had recently been through the grievance and arbitration process.  Here, the Union contends that the Hospital has raised the impact of its purported restructuring for the first time in response to this litigation.  It hotly contests the credibility of the Hospital's argument both that a restructuring has occurred and that it necessarily affects the terms of Wheeler's reinstatement.

Arbitrators regularly decide the credibility of claims made by both employers and grievants.  In contrast, federal courts are particularly unsuitable venues for these disputes.  As the First Circuit has recognized:

> [T]he federal courts play an extremely limited
> role in labor arbitration. They are, and should
> be, most reluctant in the course of enforcing an
> arbitration award to modify, supplement or resolve

> ambiguities in the arbitrator's decision, even
> when it would appear in keeping with the intention
> of the parties to do so.  When enforcement
> requires an interpretation of the arbitrator's
> award, the proper course is to remand to the
> arbitrator for clarification.

Boston Shipping Ass'n, Inc. v. Int'l Longshoremen's Ass'n,

659 F.2d 1, 3 (1st Cir. 1981).  The arbitrator -- and not

this court -- is best equipped to weigh the credibility of

the Hospital's contested re-structuring argument.

Second, as noted, in all of the cases cited by the

Hospital the changed circumstances -- for example, a loss of

business or a restructuring -- occurred entirely _after_ the

arbitration award.  In those cases, the arbitrator's award

obviously could not have contemplated the changed

circumstances because they occurred after the arbitration

and the award.

In this case, the Hospital contends that "[f]or a

number of years" it has been engaged in cost reduction

strategies including restructuring.  (Dkt. No. 17-1,

Harrison Aff. 1.)  This dispute was heard by the Arbitrator

between June 2010 and July 2011.  The award was issued on

October 7, 2011.  (Dkt. No. 1-4, Arbitration Award 1-2.)

Wheeler was reinstated to his position, with different

responsibilities, in February 2012.  As the Hospital
confirmed at oral argument, the restructuring was not a new
decision made after the Arbitrator's award.  The proper
scope of Wheeler's reinstatement, in the context of the
alleged restructuring, was not beyond what was submitted
originally to, and necessarily contemplated by, the
Arbitrator.

The Hospital argues that the restructuring was not part
of the original submission to the Arbitrator because the
issue was not explicitly discussed during arbitration.  This
argument is not persuasive.  It is well established that the
scope of the submission, and not the actual discussion
during the arbitration, defines the enquiry.  As the First
Circuit has noted, the proper question is not whether the
issue was "actually reached in the first arbitration
proceeding" but instead whether the issue was "plainly
encompassed by the original submittal."  Locals 2222, 628
F.2d at 649.

In this case, the parties submitted to the Arbitrator
the question of what the remedy should be.  Re-structuring
was going on, the Hospital admits, to some degree at that

-14-

time.  The Arbitrator had the authority to make his decision
in that context.  The question of the proper remedy given an
allegedly restructured department was well within the scope
of the submission originally made to the Arbitrator.

The Hospital also relies heavily on <u>Massachusetts</u>
<u>Nurses Ass'n v. North Adams Regional Hospital</u>, 467 F.3d 27
(1st Cir. 2006).  In that case, the First Circuit refused to
enforce a previous arbitration award for prospective relief
because the post-award dispute was not materially identical
to the dispute submitted to the arbitrator.  The case now
before this court is a much different case.  The Union is
not simply requesting that this court directly enforce an
award; it has also requested, as an alternative, a remand to
the Arbitrator.  The First Circuit recognized in <u>Mass.</u>
<u>Nurses Ass'n</u> that "[arbitration awards] are primarily a
matter for the arbitrator, not for a court."  467 F.3d at
28.  As noted previously, federal courts have a limited role
in <u>enforcement</u> of arbitration awards.  The Union's
alternative request for relief, remand, is clearly the

proper remedy here.   Nothing in the First Circuit's <u>Mass.</u>
<u>Nurses Ass'n</u> decision undermines this request.[2]

It is true that on remand the Arbitrator may have to
consider new facts regarding the claimed restructuring and
its implications for the award.  He may, in fact, be
persuaded by the factual arguments now offered by the
Hospital to this court.  However, most re-submittals to
arbitrators will involve the arbitrator making additional
determinations of facts about the disputed matter.  <u>See</u>,
<u>Coca-Cola Bottling Co., Int'l Bhd. of Teamsters</u>, 506 F.
Supp. 2d 1052, 1058 (S.D. Ala. 2007).  These new factual
issues are no bar to remand.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for
Summary Judgment (Dkt. No. 12) is hereby ALLOWED, and the
case is ordered REMANDED to the original Arbitrator to
clarify and, to the extent necessary, amplify his decision.
This case may now be closed.

---

[2] <u>Mass. Nurses Ass'n</u> is inapposite in other ways.  The
arbitrator in that case awarded prospective relief; the
Arbitrator here only required reinstatement and back-pay.
Moreover in <u>Mass. Nurses Ass'n</u> three years had passed between
the arbitration award and the new enforcement proceeding.  No
such passage of time has occurred here.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge